UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
RUBEN MORGAN,

                Petitioner,

      against

THOMAS GRIFFIN,

                Respondent.

------------------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5399 (PKC)

PAMELA K. CHEN, United States District Judge:

Ruben Morgan ("Petitioner"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction, entered on May 18, 2012, and sentence, entered on June 22, 2012, in the Supreme Court of the State of New York, Kings County. (Dkt. 1.) Petitioner claims that: (1) his conviction was defective because it was based on legally insufficient evidence; (2) he had ineffective assistance of both trial and appellate counsel; and (3) his sentence was excessive. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

**I.   Relevant Facts[1]**

    **A.  July 22, 2007 Shooting**

On July 22, 2007, at approximately 4:00 a.m., Petitioner and his cousin entered La Cabana Rodriguez Restaurant. (*See* State Court Trial Transcript ("T.") at 64:24-65:19.)[2] Shortly thereafter, Petitioner's cousin approached another patron at the restaurant, identified only as "Fico," and argued

---

[1] "In view of the defendant's conviction, we summarize the facts in the light most favorable to the verdict." *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[2] "T." refers to the transcript of Petitioner's trial between May 9, 2012 and May 18, 2012. (Dkts. 6-1, 6-2.) Unless otherwise noted, page numbers refer to the document's internal pagination.

with him. (T. 66:9-67:14, 140:7-12.) Petitioner and his cousin began to hit Fico and then continued their fight with Fico outside. (*Id.*) Approximately fifteen people from inside the restaurant also ran outside. (T. 116:11-17, 168:8-17.) During the fight, Petitioner pulled out a gun and fired it at Fico, who was standing in the crowd (T. 70:1-20), but instead hit Felix Araujo, a restaurant patron, in the back. (T. 70:15-22, 72:3-15, 191:9-16.) Petitioner then fled the scene. (T. 71:20-23.) Araujo survived. (T. 192:4-93:10, 382:6.) Later that day, New York City Police Department ("NYPD") Detectives Adalberto Zapata and Salvatore Zambito questioned employees of the restaurant, Ofelia and Edi Rodriguez. Ofelia Rodriguez ("Rodriguez") initially identified Petitioner, whom she knew by the nickname, "Ragu", as the shooter. (T. 63:8-64:11; 70:11-74:9; 74:24-76:1.) The Detectives failed to locate Petitioner and issued an I-card[3] for his arrest. (T. 388:2-95:23.)

### B. September 15, 2008 Shooting

On September 15, 2008, Stanley Willocks ("Willocks") and his mother, Nilza Willocks, were standing outside their apartment building at 145 East 18th Street in Brooklyn, New York. (T. 237:8-14.) They were approached by an individual named "Cholo" and Petitioner, who had argued earlier with Willocks for about a half-hour about why Petitioner had called Willocks's phone. (T. 238:25-42:8, 546:11-17.) Petitioner then reached into Cholo's waist area for a gun and shot at Willocks eight times, hitting Willocks once in each thigh. (T. 243:7-16, 548:4-49:6.) Petitioner then briefly left the scene, but returned and said to Willocks's mother that "[she was] not going to live much longer". (T. 247:6-14.) Petitioner then left the scene again. (T. 247:16-17.)

---

[3] An "I-card" is entered into the NYPD computer system to alert law enforcement officers that a person is connected to or "wanted" as a suspect in a criminal incident. (T. 388:5-14.)

2

### C. Petitioner's Arrest

On May 20, 2009, Petitioner was arrested and, a day later, he was identified by Rodriguez and Willocks in a police lineup as the shooter in the July 22, 2007 and September 15, 2008 shootings, respectively. (T. 401:2-19, 585:24-92:2.)

### D. Trial

Petitioner's trial on both shooting incidents[4] was held from May 9-18, 2012 before Justice Dineen Riviezzo in the Supreme Court of the State of New York, Kings County. (*See* Dkts. 6-1, 6-2.) Ofelia Rodriguez, Nilza Willocks, Stanley Willocks, and law enforcement personnel, among others, testified in the prosecution's case. (*See* T. 56:20 (Testimony of Ofelia Rodriguez), 125:1 (Testimony of Edi Rodriguez), 180:12 (Testimony of Felix Araujo), 229:5 (Testimony of Nilza Willocks), 344:8 (Testimony of Officer Gerald Migliaro), 380:8 (Testimony of Detective Salvatore Zambito), 452:12 (Testimony of Officer Chee Tam), 489:7 (Testimony of Detective James Valenti), 506:21 (Testimony of Jennifer Williams), 529:1 (Testimony of Stanley Willocks), 592:11 (Testimony of Detective Adalberto Zapata). Petitioner did not present any witnesses at the trial.

### E. Verdict and Sentencing

On May 18, 2012, the jury found Petitioner guilty of first- and second-degree reckless endangerment and second-degree criminal possession of a weapon for the July 22, 2007 incident. (T. 795:22-97:14.) The jury also found Petitioner guilty of second-degree attempted murder, second-degree-assault, and second-degree criminal possession of a weapon relating to the September 15, 2008

---

[4] As discussed *infra*, Petitioner's trial counsel did not move to sever Petitioner's trials as to the two shooting incidents.

incident. (*Id.*) On June 22, 2012, Petitioner received an aggregate sentence of twenty years' incarceration. (June 22, 2012 Sentencing Transcript, ("S."), Dkt. 6-4, at 6:6 -7:17.)[5][6]

**F. Direct Appeal**

On June 4, 2014, Petitioner appealed his conviction to the New York State Appellate Division, Second Department. (Pet.'s State App. Br., Dkt. 6-4, at ECF[7] 1-33.) In his brief, Petitioner argued that: (1) the evidence was insufficient to prove attempted murder with respect to the September 15, 2018 shooting; (2) his trial counsel was ineffective because he had failed to move for severance; and (3) his sentence was excessive. (*Id.* at ECF 7.) On February 11, 2015, the Appellate Division affirmed Petitioner's conviction. *People v. Morgan*, 125 A.D.3d 791 (N.Y. App. Div. 2015). The Appellate Division held that Petitioner's claim of insufficient evidence was unpreserved for appellate review. *Id.* at 792. The Appellate Division nonetheless denied Petitioner's claim concerning the sufficiency of evidence on its merits, finding that "the evidence was legally sufficient to establish the defendant's guilt of [attempted murder] beyond a reasonable doubt" (*id.*), and that Petitioner's remaining assertions were baseless. (*Id.*) On March 10, 2015, Petitioner applied to the New York Court of Appeals for leave to appeal the Appellate Division's decision affirming his judgment of conviction. (Pet.'s Leave

---

[5] "S." refers to the transcript of Petitioner's June 22, 2012 sentencing hearing. (Dkts. 6-3, 6-4.) Unless otherwise noted, page numbers refer to the document's internal pagination.

[6] With respect to the July 22, 2007 incident, Petitioner was sentenced to concurrent terms of imprisonment of: (1) eight years for the weapon possession convictions; (2) two and one-third to seven years for the first-degree reckless endangerment conviction; and (3) one year for the second-degree reckless endangerment conviction. With respect to the September 15, 2008 incident, Petitioner was sentenced to concurrent terms of imprisonment of: (1) twelve years for the attempted murder conviction; (2) seven years for the second-degree assault conviction; and (3) eight years for the second-degree criminal weapon possession convictions. (S. at 6:6 -7:13.)

[7] Citations to "ECF" refer to the pagination generated by the CM/ECF docketing system and not the document's internal pagination.

Letter, Dkt. 6-4, at ECF 101-06.) On August 10, 2015, the Court of Appeals denied Petitioner's application for leave to appeal his judgment of conviction. *People v. Morgan*, 26 N.Y.3d 932 (2015).

### G. Motion to Vacate

On April 27, 2015, Petitioner moved *pro se* to vacate his judgment of conviction, pursuant to N.Y. Criminal Procedure Law § 440.10 ("440 motion"), while his motion for leave to appeal was pending before the Court of Appeals. (Dkt. 6-4, at ECF 112-42.) In his 440 motion, as relevant to the instant petition, Petitioner asserted that: (1) his trial counsel failed to properly communicate, and advise him about, the immigration consequences of plea offers made by the prosecution; and (2) his sentence was excessive. (*Id.* at ECF 120, 125, 129.)

On May 23, 2016, the trial court ordered a hearing on Petitioner's motion to vacate, specifically addressing his claims of ineffective assistance of counsel. (May 23, 2016 Kings Co. Sup. Ct. Order, Dkt. 6-4, at ECF 188-90.) On October 11, 2016 and January 5, 2017, hearings were held at which Petitioner and his former trial attorney, Barry Krinsky, Esq., testified regarding whether Krinsky had sufficiently discussed the immigration consequences of the prosecution's plea offers with Petitioner. (*See generally* Oct. 11, 2016 Motion to Vacate Hearing Transcript, ("Oct. 11, 2016 T."), Dkt. 6-4.)[8] On January 19, 2017, the trial court heard post-hearing argument from the prosecution and Petitioner's appellate attorney, Robert Reuland, on the 440 motion. (*See* Jan. 19, 2017 Motion to Vacate Hearing Transcript, ("Jan. 19, 2017 T."), Dkt. 6-4, at ECF 290-314.) By order dated February 27, 2017, the trial court denied Petitioner's motion to vacate, finding that Petitioner had failed to "prove[] by a preponderance of the evidence every fact necessary to support [Petitioner's] claims." (Feb. 27, 2017 Order on Motion to Vacate ("Feb. 27, 2017 Order"), Dkt. 6-4, at ECF 331.)

---

[8] "Oct. 11, 2016 T." refers to the transcript of Petitioner's Hearing on the Motion to Vacate, held on Oct. 11, 2016 (Dkt. 6-4, at ECF 191-289.)

## H. Instant *Habeas* Petition

On September 11, 2017, Petitioner submitted the instant *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Dkt. 1.) Petitioner asserts in his *habeas* petition that: (1) the evidence was legally insufficient to convict him of attempted murder in connection with the September 15, 2008 incident; (2) his trial and appellate counsel were both ineffective; and (3) his sentence was excessive. (*Id.* at ECF 2.) In Petitioner's reply affidavit, filed on February 9, 2018, he requested a stay of proceedings so that he could return to state court and exhaust his claims regarding potential exculpatory material as related to his claims of "legal insufficiency" and "ineffective assistance of trial counsel." (Dkt. 8 at ECF 10.)[9] On March 5, 2018, this Court granted his request and stayed the petition. (March 5, 2018 ECF Order.) On May 5, 2018, Petitioner filed a letter with the Court stating that he intended to "complet[e]" and "fil[e] a pro se petition for *writ of error coram nobis*." (Dkt. 13 at ECF 5.) Petitioner has not subsequently provided the Court with any documentation of any such filing, and the Court thus assumes he has not yet exhausted these claims.

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination

---

[9] Petitioner additionally noted in his reply affidavit that he was continuing to pursue an independent New York Freedom of Information Law ("FOIL") request under N.Y. Pub. Off. Law §§ 84–90, regarding the suppression of favorable evidence related to his claims of "legal insufficiency" and "ineffective assistance of trial counsel", and that he continued to seek a stay in order to pursue that request and exhaust these claims under state law. (Dkt. 8 at ECF 5-7.) Petitioner originally attempted to argue that the "withholding of FOIL records" prevented him from submitting these claims in the instant *habeas* motion with sufficient factual support. (*See* Dkt. 1 at ECF 5.) *See also infra* note 17.

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). A federal *habeas* court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and

conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed . . .and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis, citations and internal quotation marks omitted). However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. State of N. Y.,* 956 F. Supp. 257, 259 (E.D.N.Y. 1995). Therefore, Petitioner still "bears the burden to establish, by a preponderance of the evidence, that his constitutional rights have been violated." *Davidson v. Capra*, No. 15-CV-9840 (LGS) (JLC), 2018 WL 1637967, at *10 (S.D.N.Y. Apr. 4, 2018).

## DISCUSSION

The Court now lifts the stay and decides the petition, including both the exhausted and unexhausted claims, on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").[10] The Court addresses each of Petitioner's claims in turn.

---

[10] *See Warren v. Goord*, No. 06-CV-1423 (RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) ("Though neither the Supreme Court nor the Second Circuit has established a standard to guide the exercise of this discretion, many courts in the Circuit have denied unexhausted claims upon a determination that they are patently frivolous.").

## I. Ineffective Assistance of Trial Counsel

Petitioner first argues that his trial counsel was ineffective because Petitioner's trial counsel failed to: (1) move for a severance of the two shootings at trial; and (2) properly advise Petitioner regarding "a 'plea offer' made in the case." (Dkt. 1 at ECF 3, 7.) Petitioner's claim of ineffective assistance of trial counsel is governed by the Sixth Amendment, which "guarantees the right to effective representation." *Lynch v. Dolce,* 789 F.3d 303, 311 (2d Cir. 2015) (internal quotation marks omitted). In order to show that Petitioner's constitutional rights have been violated, Petitioner must present evidence that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2), "any deficiencies in counsel's performance . . . [were] prejudicial to . . . [Petitioner's] defense[.]" *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

Under the reasonableness prong of the *Strickland* analysis, a reviewing court's "scrutiny of counsel's performance . . . [is] highly deferential", *id.* at 689, because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. To overcome this presumption, Petitioner must prove "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Under the prejudice prong of *Strickland*, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires Petitioner to show "that the errors had some conceivable effect on the outcome of the proceeding," because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

### A. Failure to Sever

Petitioner's first ineffective assistance claim is based on his trial counsel's failure to move to sever the charges arising out of the two shooting incidents for trial in his case. In support of this claim, for the first time in his *habeas* petition, Petitioner contends that he "wished to testify at trial in his own behalf as to one of the shooting (assault) incidents, but not testify as to the other." (Dkt. 1 at ECF 7.) Petitioner's contention regarding his interest in testifying was never presented to the Appellate Division, and is therefore unpreserved for appellate review in this Court. *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) ("[P]etitioner . . . [should] have [first] informed the state court of both the factual and the legal premises" brought in federal court.) Therefore, Petitioner is procedurally barred from bringing this claim.

#### 1. Reasonableness Prong

Notwithstanding this procedural bar, and addressing Petitioner's claim on the merits, the record shows that Petitioner's trial counsel actively considered filing a severance motion, but ultimately decided against doing so. (Pet.'s Leave Letter, Dkt. 6-4, at ECF 111.) The Court finds that trial counsel's decision not to seek severance was a strategic choice —one that is presumed to be reasonable and is entitled to deference. *See Strickland,* 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Here, Petitioner has simply failed to rebut the presumption. As an initial matter, Petitioner neither specifically addressed nor established in the record which criminal charge or incident he intended to testify about. In fact, Petitioner's "self-serving, post-conviction claim that he would have taken the stand in one case but not the other is not a claim a habeas court is required to credit." *Crowder v. Ercole*, No. 09-CV-3401 (CBA), 2012 WL 5386042, at *9 (E.D.N.Y. Nov. 2, 2012). Thus, there is

no factual support for Petitioner's claim that he would have testified at trial had severance been granted. Nor does Petitioner explain how the lack of severance affected his decision about testifying.

Because Petitioner's arguments do not successfully challenge the presumption of reasonableness, *Strickland,* 466 U.S. at 689, the Court cannot find that Petitioner's counsel was ineffective in deciding not to move for severance.

### 2. Prejudice Prong

"A court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." *Grant v. United States,* 725 Fed. App'x 76 (2d Cir. June 4, 2018); *see Strickland* 466 U.S. at 697. However, even assuming *arguendo* that Petitioner could meet the first prong of *Strickland,* he cannot demonstrate prejudice as to his "failure to sever" claim. Given the overwhelming evidence of Petitioner's guilt, discussed *infra* Part III, there is no reason to believe that the jury's verdict would have been different had Petitioner testified at one of his severed trials.

### B. Failure to Communicate the Immigration Consequences of Plea Offers

Petitioner's second ineffective assistance claim, which he alleges in the instant *habeas* motion without elaboration, is that his trial counsel provided "ineffective assistance of trial counsel in regard to a 'plea offer' made in the case." (Dkt. 1 at ECF 3.) Because of the vagueness of this claim, the Court assumes that Petitioner is raising the same argument he asserted in his 440 motion, *i.e.*, that his trial counsel failed to properly communicate and advise him about the collateral immigration consequences of two plea offers made by the prosecution. (Pet.'s Motion to Vacate, Dkt. 6-4, at ECF 125 (asserting that "trial counsel inadequately provided notice of the consequences regarding plea negotiation[s]" with regard to Petitioner's immigration status).)[11]

---

[11] As a general matter, the Court does not find credible Petitioner's assertion in connection with his ineffective assistance claims that he is not able to understand English. (*Id.* at ECF 117.) Petitioner "was present at over thirty-five calendar calls" in state court without expressing the need for

11

The *Strickland* test also applies in the plea context, *Hill v. Lockhart,* 474 U.S. 52, 57 (1985), and "[t]he weight of prevailing professional norms supports the view that counsel must advise [their] client regarding the risk of deportation." *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010). For many individuals facing potential criminal conviction, "[preserving [their] right to remain in the United States may be more important . . . than any potential jail sentence." *Id.* (quoting *INS v. St. Cyr,* 533 U.S. 289, 323 (2001)). Thus, the Court determines whether Petitioner's trial attorney reasonably provided him with advice "as to the risk of deportation consequences" of any plea offer made by the prosecution and whether any failure to do so prejudiced Petitioner. *Id.*

1. **Reasonableness Prong**

In denying Petitioner's 440 motion, the trial court credited the affirmation and testimony of Petitioner's trial attorney, who stated that from the very beginning of his representation, he and Petitioner "had multiple conversations regarding the fact that [Petitioner] would be subject to mandatory deportation" regardless of whether he "was convicted . . . by plea of guilty or by conviction" at trial. (Affirmation ("Aff.") of Petitioner's Trial Attorney, Dkt. 6-4, at ECF 177-78 (stating that he advised Petitioner that he "would certainly face almost certain deportation"); Feb. 27, 2017 Order at ECF 324, 330 (quoting Jan. 5, 2017 T. 15:18-22).) The trial court thus found that Petitioner's trial counsel provided Petitioner with reasonable advice "as to the risk of deportation consequences" from

---

an interpreter. (Feb. 27, 2017 Order, at ECF 329.) Although Petitioner requested an interpreter prior to trial on May 7, 2012, that lone request was prompted by his trial attorney, who stated that although he had known Petitioner "for years and had [had] numerous conversations with [Petitioner] in English," "out of an abundance of caution", he thought it "wise to have a Spanish interpreter present at trial." (*Id*. at ECF 329-30.) In any event, Petitioner was addressed directly by several judges in English, both with and without his trial counsel present, "with no indication that [he] did not understand." (*Id.* at ECF 330.) Although Petitioner's appellate attorney communicated with him through an interpreter, the attorney noted in court that Petitioner "has never indicated that English is an entirely foreign language to him". (Jan. 19, 2017 T. 5:9-17.) The record as a whole thus belies any claim by Petitioner that he did not understand his English-speaking attorneys.

12

his conviction. *Padilla*, 559 U.S. at 367 (Feb. 27, 2017 Order at ECF 331). There is therefore no indication in the record that trial counsel's performance was deficient, unreasonable or otherwise outside "the range of competence demanded of attorneys in criminal cases" under the Sixth Amendment with respect to the advice he gave Petitioner regarding the likelihood of deportation if convicted of the charges he was facing. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

### 2. Prejudice Prong

As noted *supra,* "[a] court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." *Grant*, 725 Fed. App'x at 76; *see also Strickland,* 466 U.S. at 697. However, even assuming *arguendo* that the conduct of Petitioner's trial counsel fell below an objective standard of reasonableness, Petitioner also fails to demonstrate prejudice. In order to prevail on this claim, Petitioner "must show a reasonable probability that, but for his counsel's asserted errors, he could have pleaded to an offense for which deportation would not have been mandatory." *Phillips v. United States*, No. 14-CV-5820 (NG), 2015 WL 4112483, at *4 (E.D.N.Y. July 7, 2015). Here, there is no support in the record for this conclusion. At no time did the prosecution or trial judge present to Petitioner an offer to plead to a non-deportable offense. (*See* Jan. 5, 2017 Motion to Vacate Hearing Transcript ("Jan. 5, 2017 T."), Dkt. 6-4, at 15:23-16:25.)[12] Because nearly all of Petitioner's charges and convictions, as discussed *supra*, constitute criminal offenses subject to mandatory deportation,[13]

---

[12] "Jan. 5, 2017 T." refers to the transcript of Petitioner's Hearing on the Motion to Vacate, held on Jan. 5, 2017. (Dkt. 6-4, at ECF 249-314.)

[13] *See Moncrieffe v. Holder,* 133 S. Ct. 1678 (2012) (summarizing statutory scheme under the Immigration and Nationality Act ("INA") and categorical approach to identifying deportable criminal offenses). Generally, deportable crimes fall into two broad categories: "crimes involving moral turpitude" and "aggravated felonies." *See* 8 U.S.C. § 1227(2)(A)(i), (iii). Aggravated felonies encompass, *inter alia*, crimes "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 842(i)(1); 8 U.S.C. § 1101(a)(43)(e)(i). Here, because nearly all of Petitioner's state charges and convictions under N.Y. Penal Law § 70.02 (with the exception of second-degree reckless endangerment under N.Y. Penal Law § 70.15) are aggravated felonies punishable for multi-

Petitioner would have been subject to mandatory deportation whether convicted pursuant to one of the prosecution's or trial court's plea offers or convicted at trial. (*See* Jan. 5, 2017 T. 15:23-16:25; *see also* Feb. 27, 2017 Order, at ECF 324, 330.) Thus, Petitioner cannot demonstrate prejudice based on any alleged failure of counsel to advise him of the immigration consequences of any plea offer.

Moreover, in the plea context, Petitioner must also "demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." *Raysor v. United States,* 647 F.3d 491, 495 (2d Cir. 2011) (citing *Purdy v. United States,* 208 F.3d 41, 49 (2d Cir. 2000)). In denying Petitioner's motion to vacate, the trial court found—in addition to finding no deficiency in trial counsel's performance—that Petitioner had not sufficiently proved that he would have taken the plea offers available to him. (*See* Feb. 27, 2017 Order, at ECF 330 (finding that (1) the trial court itself informed Petitioner in open court of the two plea offers; (2) trial counsel represented on the record that he had conveyed and explained the offers to Petitioner, and (3) Petitioner respectfully declined, stating that "[Petitioner] maintained his innocence on this case and wished to go to trial.").)

\* \* \*

In sum, because Petitioner cannot demonstrate either deficient performance or prejudice with respect to not seeking severance or being informed about the immigration consequences of the prosecution's plea offers, Petitioner's Sixth Amendment ineffective assistance of counsel claim is dismissed.

---

year terms of imprisonment that well exceed one year (S. 6:6-7:13), they ultimately trigger automatic removal and deportation under the INA. Petitioner was never offered a plea deal for a term of imprisonment of less than one year, and had he accepted either the 10- or 15-year plea offer from the court or prosecution, he would have been subject to mandatory deportation and removal. (*See* Jan. 5, 2017 T. 15:23-16:25; *see also* Feb. 27, 2017 Order, at ECF 324, 330.)

## II. Ineffective Assistance of Appellate Counsel

Petitioner presents his ineffective assistance of appellate counsel claim for the first time in his *habeas* petition. (Dkt. 1 at ECF 2, 5.)[14] Although Petitioner fails to explain the basis of this claim in his *habeas* petition (*id.*), the Court liberally construes Petitioner's complaint to be that his appellate counsel failed to review trial counsel's case file to determine whether trial counsel failed to impeach Stanley Willocks and other witnesses about benefits they received from the prosecution in exchange for their testimony. (*See id.*) This argument fails.

"As a general rule, 'decisions about whether to engage in cross-examination [are] strategic in nature and generally will not support an ineffective assistance claim[,]'" *Jelinek v. Costello*, 247 F. Supp. 2d 212, 275 (E.D.N.Y. 2003) (quoting *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir. 2002)), and thus it would not be ineffective for appellate counsel not to search trial counsel's file for this type of impeachment material and not to argue on appeal that the failure to pursue a particular line of impeachment on cross-examination amounted to ineffective assistance by trial counsel. Here, Petitioner argues that Stanley Willocks's "cooperation agreement", "air travel expenses" "hotel lodging", "and [likely] other benefits" should have been disclosed to trial counsel and

---

[14] As noted *supra*, it does not appear that Petitioner has yet filed a writ of error *coram nobis*, which is a proper vehicle to challenge the effectiveness of appellate counsel in state court. (Pet.'s May 2, 2018 Status Report, Dkt. 14, at ECF 5 (Petitioner stating his intent to "complet[e] and . . . fil[e] a *pro se* petition for writ of error coram nobis" in the future).) Thus, while Petitioner's claim of ineffective assistance of appellate counsel does not appear to be exhausted, the Court has lifted the stay in this action and exercises its discretion to address Petitioner's claim on the merits. *See Galdamez v. Keane,* 394 F.3d 68, 71 (2d Cir. 2005) (Nonetheless, the Court may "deny a petition on the merits as a matter of discretion, even if the petitioner pressed some unexhausted claims in his or her habeas petition."); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

should have been the subject of cross-examination.[15] (*See* Pet.'s Reply Aff., Dkt. 8 at ECF 7-8.) However, it is clear from the record that Petitioner's trial counsel did receive discovery about Willocks (*see* T. at 525:3-27:10; 531:5-32:21), and that Petitioner's counsel made a strategic decision to limit the scope and content of Willocks's cross-examination, so as not underscore Willocks's fear about testifying against Petitioner at trial. (*See id.*) Petitioner's appellate counsel, therefore, was not ineffective for failing to raise a meritless argument about trial counsel's cross-examination of Willocks.

With respect to the prosecution's other witnesses, there is nothing in the record to suggest that they received any benefits. Even if such information did exist, Petitioner does not point to anything in the record suggesting that discovery or impeachment material was withheld by the prosecution. *King v. Greene,* No. 03-CV-3743 (NG), 2006 WL 1764379, at *7 (E.D.N.Y. June 26, 2006) ("Absent evidence that exculpatory or impeachment material is being withheld by the prosecution, a trial court has no constitutional duty to probe beyond the prosecution's representation that no such material exists.").[16] Petitioner's already attenuated claim about his appellate counsel's ineffectiveness, *see Jelinek*, 247 F. Supp. 2d at 275, cannot be based on conclusory assertions and sheer speculation such as this. *Concepcion v. United States*, 181 F. Supp. 2d 206, 227 (E.D.N.Y. 2002) (quoting *United States v. Aiello,* 814 F.2d 109, 113 (2d Cir. 1987)) ("Any generalities,

---

[15] Although Petitioner includes in this argument benefits received by other prosecution witnesses, there is nothing in the record to indicate that such benefits even existed.

[16] While Petitioner may believe that his outstanding FOIL request will yield such information, this unsupported belief does not cure the absence of any indication in the record that the prosecution failed to comply with its obligation to turn over exculpatory or impeachment material regarding its witnesses. Indeed, the record establishes, at a minimum, that the prosecution did so with respect to Willocks (*see* T. at 525:3-27:10; 531:5-32:21), and there is no basis to conclude that it did not do the same for all of its witnesses.

conclusory assertions and hearsay statements will not suffice" to establish a claim upon *habeas* review).

Accordingly, the Court finds that Petitioner's claim of ineffective assistance by his appellate counsel is without merit.

## III. Sufficiency of the Evidence

Petitioner alleges that the prosecution's charge of "attempt[ed] . . . murder was not supported by legally sufficient evidence." (Dkt. 1 at ECF 5.) The Appellate Division denied this claim because Petitioner "failed to preserve [the issue] for appellate review." *Morgan*, 125 A.D.3d at 792.[17] Accordingly, Petitioner's claim is not properly raised on *habeas* review. *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996) ("[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.")); *Moore v. James*, No. 11-CV-1971 (MKB), 2016 WL 5818539, at *6 (E.D.N.Y. Oct. 4, 2016) (same).

Notwithstanding any procedural bar, the Court considers the merits of this claim and finds it unavailing. Here, the Appellate Division held that the evidence at trial was legally sufficient to

---

[17] To the extent that Petitioner contends that the state's denial of his FOIL request constitutes "suppression of favorable evidence" (Dkt. 1 at ECF 8), the Court does not have jurisdiction to consider this claim. *See, e.g., Posr v. City of New York*, No. 10-CV-2551 (RPP), 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("This Court is without jurisdiction to consider Plaintiff's FOIL-related claims. . . . Under New York State law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y.C.P.L.R. Article 78."); *see also* N.Y. Pub. Off. Law §§ 84–90. The Court also has no jurisdiction over violations of state law under 28 U.S.C. § 2254. Furthermore, Petitioner's FOIL request was not filed until after his conviction and thus cannot constitute the "suppression of favorable evidence" for purposes of a *Brady* claim. *Brady v. Maryland,* 373 U.S. 83 (1963). Rather, Petitioner appears to be arguing— again based on sheer speculation—that his FOIL request will reveal exculpatory evidence that the prosecution failed to disclose prior to Petitioner's trial. Such speculation cannot support *habeas* relief.

establish Petitioner's guilt beyond a reasonable doubt for attempted murder in the second degree with respect to the September 15, 2008 incident. *Morgan,* 125 A.D.3d at 792. On *habeas* review, a federal court may only overturn a state court decision rejecting a sufficiency of the evidence challenge "if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Upon a full review of the record, the Court does not find the state court's decision with respect to Petitioner's attempted murder conviction to be objectively unreasonable. At trial, multiple witnesses, including the victim, Stanley Willocks, and his mother, both of whom knew Petitioner and were witnesses to the shooting, identified him as the shooter. (T. at 239:12-40:23, 244:10-45:3) (Testimony of Nilza Willocks); 534:9-35:5; 547:22-49:6 (Testimony of Stanley Willocks).) Indeed, shortly after shooting Stanley Willocks in his mother's presence, Petitioner returned to the scene and threatened Willocks's mother, telling her that she was "not going to live much longer". (T. 247:6-14.) In the face of this direct evidence of his culpability, Petitioner offers no argument as to why the evidence introduced at trial with respect to the September 2008 shooting is insufficient to support his conviction for attempted murder. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (party challenging sufficiency of evidence is only entitled to relief if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.")

Accordingly, Petitioner's sufficiency of the evidence claim is denied.

## IV. Excessive Sentencing

Petitioner's challenge to his state court sentence offers "[n]o federal constitutional issue . . . where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988)

("When a sentence is within [ ] [its prescribed] range, a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal."). New York law prescribes a range of imprisonment of two to seven years for first-degree reckless endangerment (N.Y. Penal Law § 70.02), a maximum of one year for second-degree reckless endangerment (N.Y. Penal Law § 70.15), three-and-a-half to fifteen years for second degree criminal possession of a weapon (N.Y. Penal Law § 70.02), five to twenty-five years for second degree attempted murder (*id.*), and two to seven years for second degree assault. (*Id.*) Petitioner's sentences for each of his crimes of conviction were within these prescribed ranges (*see* S. 6:6-7:13), and, therefore, he has no legally cognizable challenge with regard to "excessive sentencing" on federal *habeas* review.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Because Petitioner fails to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: September 26, 2018
      Brooklyn, New York